IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CAROL A. COLLINS,                                    No. 3:16-cv-00389-HZ

        Plaintiff,                              OPINION & ORDER

    v.

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security,

        Defendant.
_____

Richard F. McGinty
McGinty & Belcher, Attorneys
P.O. Box 12806
Salem, OR 97301

        Attorney for Plaintiff,

Billy J. Williams
Janice E. Hebert
U.S. Attorney's Office
1000 SW Third Avenue, Suite 600
Portland, OR 97204

//

//

Sarah Moum
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff, Carol A. Collins, seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, it is AFFIRMED.

## PROCEDURAL BACKGROUND

      Plaintiff protectively filed an application for DIB and SSI on November 29, 2011, alleging disability beginning on January 1, 2009. Tr. 15.[1] Her application was denied initially and on reconsideration. Following a denial of benefits, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On August 22, 2014, an ALJ determined that Plaintiff was not disabled. Tr. 31. The Appeals Council affirmed the ALJ's decision on January 20, 2016. Tr. 1–3. This appeal followed.

## FACTUAL BACKGROUND

      Plaintiff was born in 1959 and was fifty-four years old at the time of the hearing. Tr. 47. She has a high school education, obtained an associate's degree, and has past work experience as a personal care assistant, institutional cook, office worker, and sales clerk. Tr. 260. Plaintiff alleges disability based on having kidney stones, diabetes, lumbar degenerative disc disease, as

---

[1] Citations to "Tr." refer to the administrative record filed here as ECF 13 and 14.

well as a variety of other conditions and symptoms including hypertension, hearing loss, obstructive sleep apnea, depression, arthritis, and anxiety. Tr. 17–18, 51, 60–61.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure. See *Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial activity since her application date. Tr. 17. Next, at steps two and three, the ALJ determined that Plaintiff has severe impairments of mild lumbar degenerative disc disease, diabetes mellitus, and kidney stones, but that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity one of the listed impairments. Tr. 17–21.

At step four, the ALJ concluded that Plaintiff has the RFC to perform light work except that Plaintiff can lift, carry, push and pull twenty pounds occasionally and ten pounds frequently, stand and walk for two hours in an eight-hour workday, sit for six hours in an eight-hour workday, and can no more than frequently stoop or climb ladders, ropes or scaffolds. Tr. 21. With this RFC, the ALJ determined at step four that Plaintiff was able to perform past relevant work as an office worker. Tr. 31. Accordingly, analysis did not proceed to step five. *Id.*

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record.

42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402

U.S. 389, 401 (1971) (citation and internal quotations omitted). In reviewing the Commissioner's

alleged errors, this court must weigh "both the evidence that supports and detracts from the

[Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is

rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

When the evidence before the ALJ is subject to more than one rational interpretation, we

must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d

1035, 1041 (9th Cir. 1995)). A reviewing court, however, "cannot affirm the Commissioner's

decision on a ground that the Administration did not invoke in making its decision." *Stout v.

Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a

court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56.

"[T]he burden of showing that an error is harmful normally falls upon the party attacking the

agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

DISCUSSION

Plaintiff argues the ALJ erred by improperly: (1) discounting the opinions of Drs. Craig

Thornton and Joseph Arnold; (2) omitting a number of Plaintiff's functional limitations from her

RFC; and (3) finding that Plaintiff is not fully credible.

**I.      The Opinions of Drs. Thornton and Arnold**

Dr. Thornton has been Plaintiff's treating physician since 2004. Tr. 1818. Dr. Arnold was

an examining psychiatrist who provided an initial evaluation when Plaintiff began treatment at

Yamhill County Adult Mental Health. Tr. 19. The ALJ gave the opinions of Dr. Thornton and

Dr. Arnold "mostly . . . little weight" when determining that Plaintiff was not disabled. Tr. 28. In

social security cases, there are three types of medical opinions that courts accord different

weight. *Valentine*, 574 F.3d at 692. Generally, more weight is given to the opinion of a treating

source than to an examining source and more weight is given to the opinion of an examining

source than to a non-examining source. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1996).

An ALJ will give "controlling weight" to a treating source's opinion that is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). "To reject an

uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing

reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216

(9th Cir. 2005). If the opinion is contradicted, the ALJ must provide "specific and legitimate

reasons" for rejecting it. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "The ALJ can

meet this burden by setting out a detailed and thorough summary of the facts and conflicting

clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*,

881 F.2d 747, 751 (9th Cir. 1989) (quotation and citation omitted). Specific and legitimate

reasons for rejecting a treating physician's opinion include its reliance on a claimant's

discredited subjective complaints or its inconsistency with the medical records or a claimant's

daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). "Generally, the more

consistent an opinion is with the record as a whole, the more weight we will give that opinion."

20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *Valentine*, 574 F.3d at 692–93. If a treating

physician's opinion is inconsistent with substantial evidence, then it is not entitled to "controlling

weight," but it may still be "entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

Further, "the regulations give more weight to opinions that are explained than to those that are not" and gives more weight "to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d)(3), (5).

### *a. Dr. Thornton*

Dr. Thornton has been Plaintiff's primary care physician since 2004. Tr. 1818. He provided a number of opinions in the form of letters, as well as extensive chart notes in the record. After recounting much of Dr. Thornton's testimony, the ALJ determined that his opinion was entitled to mostly little weight:

> MD Thornton's opinions are mostly given little weight, as they are inconsistent with the overall medical evidence record. MD Thornton described deconditioning as one of [Plaintiff's] significant problems, although this is not a medically determinable impairment for social security purposes. He gives limitations with [Plaintiff's] use of the hands, although there is no evidence of [Plaintiff] suffering from peripheral neuropathy or another impairment impacting hand function. While he described [Plaintiff]'s diabetes as not well controlled, treatment records suggest that in fact it was mostly at least moderately controlled during the relevant period. He does not even mention the consistent notations of her non-compliance with recommended treatment modalities. His assessment of [Plaintiff] with degenerative arthritis of the knee is not supported by imaging in October 2012 (Ex. 10F/37–39). While he concluded her degenerative arthritis and her mental impairment "most greatly" affect her ability to work, imaging reports showed only mild degeneration, and nerve conduction studies were normal. She has received very limited, routine and conservative care for her psychiatric impairment, which does not square with MD Thornton's assessment that it "most greatly" affects her work ability.

Tr. 28.

Plaintiff argues that the ALJ was wrong to discount Dr. Thornton's opinion based on his alleged oversight of Plaintiff's noncompliance with treatment as well as his testimony regarding

deconditioning, hand limitations, level of control over diabetes, degenerative arthritis of the knee, and psychiatric problems. Defendant argues that the ALJ validly limited the weight given to Dr. Thornton's opinion because it is contradicted by the overall medical record.

As mentioned above, the ALJ noted that Dr. Thornton "described deconditioning as one of the claimant's significant problems, although this is not a medically determinable impairment for social security purposes." Tr. 28, 1209. Plaintiff argues that Dr. Thornton never reported that deconditioning alone is the basis for his disability opinion, but rather Dr. Thornton's opinion is based on Plaintiff's multitudinous issues and symptoms. Specifically, Dr. Thornton stated that:

> [Plaintiff] has morbid obesity, deconditioning due to that, attention deficit disorder, major depressive disorder, migraines, type 2 diabetes that is reasonably well controlled, well-controlled asthma, and sleep apnea. . . . I think that the obesity, depression, attention deficit disorder and fatigue, which is related to deconditioning associated with these above problems are the most significant factors affecting her ability to be employed.

Tr. 1209. Plaintiff argues that Dr. Thornton's opinion should not have been discredited because it accounts for impairments other than deconditioning as the bases for Plaintiff's disability. Defendant argues that, notwithstanding the ALJ's discussion of deconditioning, there were other considerations supporting his decision to discount Dr. Thornton's opinion that were valid and based on substantial evidence. Because the ALJ rejected Dr. Thornton's opinions based on other valid considerations, Plaintiff's argument that the ALJ's consideration of deconditioning amounts to harmful error fails.

The ALJ noted that Dr. Thornton assessed limitations in Plaintiff's use of her right hand, despite a lack of evidence of peripheral neuropathy or any other impairment affecting hand function. Tr. 28, 718. Plaintiff argues that she is obese, and that obesity can cause finger and hand functioning limitations where there is adipose (fatty) tissue. *See* SSR 98-6p. Defendant points out that Plaintiff presents no credible evidence of the presence of such adipose tissue, or

any other evidence that her obesity limits her right hand's ability to handle, finger, and feel. Defendant additionally argues that Dr. Thornton did not provide any explanation for the basis of Plaintiff's limitations in her right hand. *See* Tr. 718.

A doctor's opinion can be rejected if unsupported by medical findings, personal observations, or test reports. *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998). Further, an ALJ may validly reject "check-off reports" when they do not "contain any explanation of the bases of their conclusions." *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *see also Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012) (the ALJ validly rejected reports consisting of "check-the-box forms" wherein the doctor failed to "provide supporting reasoning or clinical findings, despite being instructed to do so"). Additionally, a report's consistency with other records, reports, or findings can form a legitimate basis for evaluating the reliability of a report. *Id.*

Here, Dr. Thornton assessed limitations in Plaintiff's right hand without providing any explanation, or supporting that assessment with any medical findings, personal observations, or test reports, despite being asked to do so. *See* Tr. 718. Throughout the entire report, particularly in the section assessing limitations in Plaintiff's hands, Dr. Thornton left blank the space for identifying particular medical or clinical findings (i.e., physical exam findings, x-ray findings, laboratory test results, history, and symptoms including pain, etc.), which support his assessments. *Id.* Dr. Thornton's opinion is also contradicted by the Feb. 11, 2013 medical opinion of Dr. Linda Jensen, which assessed no manipulative limitations and was given great weight by the ALJ. Tr. 29, 109–15. The ALJ thus provides a specific and legitimate reason for limiting the weight given to Dr. Thornton's report and thereby omitting the limitation of Plaintiff's hand from the RFC.

Plaintiff also argues that the ALJ erred by discrediting Dr. Thornton's medical opinion describing Plaintiff's diabetes as "not well controlled" in a letter dated May 9, 2014. Plaintiff points out that Dr. Thornton's treatment notes indicated that Plaintiff's diabetes was "moderately controlled" during the relevant period. Tr. 25, 28, 742, 778, 795, 812, 1818. Furthermore, in another letter dated September 3, 2013, Dr. Thornton describes Plaintiff's diabetes as "reasonably well controlled." Tr. 1209. Plaintiff alleges that the ALJ selectively cited to a point in time where Plaintiff was having difficulty controlling her diabetes and ignored Dr. Thornton's overall opinion regarding Plaintiff's diabetes. However, the ALJ considered Dr. Thornton's most recent letter, dated May 9, 2014, which is the one that described Plaintiff's diabetes as "not well controlled." Tr. 1818. In any event, the ALJ credited Dr. Thornton's other opinions regarding Plaintiff's diabetes and included diabetes as one of her severe impairments. Plaintiff therefore fails to show any harmful error with regard to the ALJ's treatment of Dr. Thornton's opinions addressing Plaintiff's diabetes.

Regarding Plaintiff's noncompliance with treatment recommendations, she argues that Dr. Thornton's records should not be parsed in litigation. Because Dr. Thornton was Plaintiff's treating physician for ten years, it is reasonable to infer that he was aware of any difficulty Plaintiff had with complying with treatment. Plaintiff further argues that Dr. Thornton's omission of noncompliance in his opinions is not a reason to discredit his medical opinion. Additionally, Dr. Thornton discusses noncompliance in many of the treatments notes. *See* Tr. 750, 772, 818, 831, 849, 1832, 1852, 1858, 1885. Inconsistency between a physician's treatment notes and opinions is a valid reason for discounting that physician's opinions. Furthermore, Plaintiff's non-compliance with regard to her diabetes was not a determinative issue in the ALJ's opinion. Indeed, the ALJ credited diabetes as one of Plaintiff's severe impairments. Furthermore,

the ALJ provided other valid reasons for discounting Dr. Thornton's opinion. Accordingly, the Court finds that Plaintiff argument that the ALJ's committed harmful error by noting that Dr. Thornton's report overlooked her noncompliance fails.

The ALJ noted that while Dr. Thornton assessed degenerative arthritis of the knee, imaging did not support that assessment. Tr. 28, 1068–70, 1818. Plaintiff argues that the ALJ erred in finding Dr. Thornton's opinion contradictory to the medical evidence. In particular, the ALJ discusses Plaintiff's arthritic knee in isolation, rather than considering it alongside her obesity, the effect of which may produce greater impairments than may be expected in someone without obesity. SSR 02-1p. While obesity may produce greater impairments than otherwise expected, there must still be medical signs and findings established by medically acceptable diagnostic techniques. Those signs and findings must show the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. Here, the October 2012 imaging does not support a finding of severe degenerative arthritis. Tr. 1068–70. Dr. Thornton acknowledged that "x-rays do not show any severe degenerative arthritis." Tr. 1209. Dr. Jensen also reviewed Dr. Thornton's assessments as well as other records including medical imaging and found that Plaintiff's knee x-ray exams were normal. Tr. 29, 109, 112–113. Again, a report's consistency with other records, reports, or findings can form a legitimate basis for evaluating the reliability of a report. *Reddick*, 157 F.3d at 726. Dr. Thornton's opinion that degenerative arthritis "most greatly" affects Plaintiff's ability to work was at odds with the October 2012 imaging showing only mild degeneration. These inconsistencies between Dr. Thornton's opinions and the medical record constitute substantial evidence supporting specific and legitimate reasons for the ALJ to accord Dr. Thornton's opinion less weight.

Moreover, Dr. Thornton opined that Plaintiff's psychiatric problems "most greatly" affected Plaintiff's ability to work. Tr. 28. The ALJ found the opinion contrary to the medical record showing that Plaintiff has received only "very limited, routine, and conservative care for her mental impairment." *Id.* The ALJ correctly discussed Plaintiff's mental health impairments at step two, finding that Plaintiff's severe impairments did not extensively impair her activities in the four functional areas the ALJ must consider. Tr. 18–21. Because Dr. Thornton's opinion conflicts with the medical record, the ALJ did not err in limiting its weight with regard to Plaintiff's psychiatric problems. *Id.*

Plaintiff also argues that the ALJ's decision to give opinions "mostly little weight" creates an ambiguity that deprives the decision of the support of substantial evidence. However, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755. Additionally, "[e]ven when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may be reasonably discerned." *Molina*, 674 F.3d at 1121 (internal quotation marks omitted). It is reasonable to infer that the ALJ limited the weight of Dr. Thornton's opinion to the extent that it was inconsistent with the medical record. The ALJ here provided specific and legitimate explanations after summarizing the facts and clinical evidence in a detailed and thorough fashion, expressing her interpretation and making findings, as required by the standard.

### b. Dr. Arnold

Dr. Arnold, an M.D. and psychiatrist, provided the initial psychiatric assessment for Plaintiff when she began treatment at Yamhill County Adult Mental Health. Tr. 532–37. He gave a provisional diagnosis of ADHD. Tr. 537. He also diagnosed Plaintiff with recurrent major depression, alcohol abuse in remission, and cannabis abuse in remission. *Id.* Dr. Arnold assigned

Plaintiff a Global Assessment of Functioning ("GAF") score of 50. *Id.* Plaintiff objects to the

ALJ limiting the weight of Dr. Arnold's opinion with regards to the provisional ADHD diagnosis

and the GAF score of 50.

Plaintiff argues that the ALJ should not have accorded Dr. Arnold's ADHD diagnosis

little weight simply because it was provisional. This assertion is meritless. A medical opinion can

be accorded less weight if it is inconsistent with the medical record and if the ALJ provides

specific and legitimate reasons for limiting the weight of the opinion. *Garrison*, 759 F.3d at

1012. Here, the ALJ found that the provisional diagnosis of ADHD was inconsistent with the

July 13, 2012 evaluating opinion of Robert Weniger, PsyD, in addition to being inconsistent with

Plaintiff's educational and vocational achievements. Tr. 19, 693, 695. The ALJ provided a

number of such inconsistencies in explaining why the ADHD diagnosis was inconsistent with the

medical record. For example, Plaintiff completed an Associate Arts degree and received a 4.0

GPA; she denied problems focusing or concentrating during her collegiate studies; she was able

to sustain attention for a multi-hour evaluation; the test results from a number of psychological

testing administered by Dr. Weniger indicated that her general intellectual ability was in the

average range, with no indication of intellectual deficiency; her academic abilities were within

expected ranges with no indication of a specific learning disability; and her cognitive abilities

were entirely within normal limits, with no indication of a cognitive disorder. Tr. 19–20, 695–

699. The ALJ provided specific and legitimate reasons for limiting the weight of Dr. Arnold's

opinion with regard to the provisional ADHD diagnosis, as required by the standard.

Plaintiff objects that the ALJ erred by using Dr. Weniger's opinion, which she accorded

little weight, to discount Dr. Arnold's opinion. The ALJ accorded Dr. Weniger's opinion little

weight because the opinion was equivocal in its discussion of Plaintiff's work limitations. Tr. 28-

29. The ALJ relied on the objective measures of Plaintiff's cognitive performance from the tests Dr. Weniger conducted to limit Dr. Arnold's opinion. Tr. 19–20. Rejecting Weniger's equivocal statements, but relying on the results of objective psychological tests conducted by Dr. Weniger, creates no inconsistencies.

Plaintiff also argues that the ALJ lacks the ability and training to reject Dr. Arnold's GAF assessment. However, the standard merely imposes upon the ALJ the requirement that, if an opinion is contradicted, the ALJ must provide specific and legitimate reasons to limit the weight of the opinion. Here, Dr. Arnold's assessment of a GAF score of 50 was contradicted by Dr. Weniger's opinion giving Plaintiff a score of 55. Tr. 19, 533, 699. The ALJ listed activities, accomplishments, and statements made by the Plaintiff indicating that her limitations were not as severe as a GAF score of 50 would ordinarily provide for, and that the low GAF score was therefore unsupported. Tr. 19. The ALJ therefore provided valid reasons, supported by substantial evidence in the record, to discount Dr. Arnold's assessment.

"The decision of the ALJ will not be reversed for errors that are harmless." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). However, a reviewing court cannot consider an error harmless, "unless it can confidently conclude that no reasonable ALJ . . . could have reached a different conclusion." *Id.* at 1056. In other words, legal errors are harmless only if they are inconsequential to the non-disability decision. *Id.* at 1055. Defendant argues Plaintiff has not established any harm, as Dr. Arnold made no actual functional assessments: Dr. Arnold did not explain how Plaintiff's psychological conditions precluded her from work activity. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (finding that the ALJ's rejection of an examining psychologist's opinion was proper because "[a]lthough [the doctor] identified characteristics that might limit [the claimant's] ability

to work on a sustained bases: affective instability, intense anger, daily suicidal thoughts, and chronic feelings of emptiness, [the doctor] did not explain *how* these characteristic precluded work activity in [the claimant's] case"). Because Dr. Arnold assessed no limitations, the ALJ's determination of Plaintiff's RFC would not have been different, even if she had fully credited Dr. Arnold's opinion. Plaintiff's argument therefore fails to establish harmful error with regard to the ALJ's treatment of Dr. Arnold's opinion.

## II.     The ALJ's RFC Findings

### a.  *Renal Condition (Kidney Stones)*

Plaintiff argues that the ALJ erred by failing to find that Plaintiff's kidney stones would cause her to be periodically absent from work. According to Plaintiff, the ALJ's opinion is internally inconsistent because it provides for permanent standing and walking limitations due to "periodic" kidney stones but does not provide a functional limitation for absenteeism caused by "intermittent exacerbations" of pain due to the kidney stones. Tr. 25, 27, 29.

The ALJ's opinion, however, is not inconsistent. Contrary to Plaintiff's argument, the ALJ did not limit her ability to stand and walk because of her kidney stones. Instead, the ALJ found that Plaintiff was limited in her ability to stand and walk because of her back problems. Tr. 24. Plaintiff misinterprets the ALJ's statements with regard to Dr. Jensen's opinion. The ALJ wrote: "MD Jensen's opinion is given great weight, although based on subsequent medical evidence, I find the claimant's kidney stones also to be a severe impairment, and I further limited the claimant's ability to stand/walk." Tr. 29. In other words, the ALJ found the kidney stones to be a severe impairment while Dr. Jensen did not. Additionally, in a separate finding, the ALJ limited Plaintiff's ability to stand and walk more severely than Dr. Jensen did, due to Plaintiff's back problems.

The ALJ also rationally interpreted the evidence and concluded that Plaintiff's kidney stones did not require a functional limitation for absenteeism. Plaintiff points to the opinion of Dr. Thornton, which stated that Plaintiff's "renal stone problems have a significant interruption to her life and ability to be employed." Tr. 1209. However, as discussed above, the ALJ gave valid reasons for limiting the weight assigned to Dr. Thornton's opinions. Furthermore, Dr. Thornton did not assess any specific absenteeism limitations. *Id.* While Dr. Thornton did indicate that Plaintiff would miss work at least two full days per month due to pain, he did not specify that the absenteeism would be caused by kidney stones. Tr. 715 Therefore, the ALJ did not err by failing to include a functional limitation for absenteeism in Plaintiff's RFC.

### b. *Anxiety*

Plaintiff alleges that the ALJ erred by finding that, at the time of the July 8, 2014 hearing, Plaintiff's anxiety had not "been extant for twelve months." Tr. 19. Specifically, Plaintiff argues that the ALJ failed to assess whether it was expected that Plaintiff's anxiety would last twelve months. 20 C.F.R. §§ 404.1505(a), 416.905(a). Once more, Plaintiff has the burden of establishing that the impairment is expected to last twelve months. *See Valentine*, 574 F.3d at 689. Here, Plaintiff points to evidence showing that she had been treated for anxiety for over twelve months before the hearing. The first cited note, dated August 2011, documents Plaintiff's goal "[t]o learn coping skills for anxiety in the work setting." Tr. 519. However, Plaintiff's provider did not diagnose an anxiety disorder at that date. The mere experience of some anxiety towards employment is not necessarily a diagnosis of an anxiety disorder. It was rational for the ALJ to interpret this evidence as showing that Plaintiff suffered from garden-variety anxiety rather than a more severe form of anxiety. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at

679.The second note Plaintiff cites is Dr. Weniger's assessment, which states that Plaintiff

showed "symptoms of . . . anxiety" and that "she may also exhibit physiological symptoms of

anxiety." Tr. 698. However, as mentioned above, the ALJ gave Dr. Weniger's opinion "little

weight" because of its equivocal statements. Tr. 28. In the third note cited by Plaintiff, from a

group therapy session, Plaintiff reported that her anxiety regarding financial difficulties had been

alleviated. Tr. 1281. This note also lacks a diagnosis of an anxiety disorder. The ALJ noted that

Plaintiff began taking Prozac only in September 2013, and was not diagnosed with anxiety by

her primary care physician until October 2013. Tr. 19, 1828, 1842. The ALJ's finding that

Plaintiff's anxiety was not extant for twelve months was therefore supported by substantial

evidence.

Plaintiff argues that the ALJ erred by not considering Plaintiff's anxiety-related

functional limitations. However, the ALJ found Plaintiff's anxiety to be medically determinable

and considered it when assessing Plaintiff's RFC. Tr. 20, 22. The ALJ found that Plaintiff's

affective and anxiety disorders were nonsevere because they did not cause more than minimal

limitation with regard to performance of basic mental work activities. Tr. 20. The ALJ

considered Plaintiff's credible limitations, and analyzed them properly in the context of the four

broad functional areas as required by the regulations. *Id.* Therefore, the ALJ did not fail to

consider Plaintiff's anxiety-related functional limitations.

### III.    Plaintiff's Credibility

Plaintiff argues that the ALJ erred by finding that her functioning was not as limited as

she claimed. When the record establishes a medically determinable impairment that could

reasonably cause a claimant's reported symptoms, the ALJ must evaluable the claimant's

symptom reports. 20 C.F.R. §§ 404.1529, 416.929. An ALJ analyzes the credibility of a

claimant's testimony regarding her subjective pain and other symptoms in two steps. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036 (citation and internal quotation omitted). "The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (citation and internal quotation omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject her testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (citation and internal quotation omitted).

In determining whether a claimant's testimony regarding the severity of her symptoms is credible, the ALJ "may consider a number of factors, such as the medical record, the claimant's daily activities, and ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Burch*, 400 F.3d at 681. Even if some of the ALJ's findings for discrediting symptom allegations are not upheld, the overall decision may still be upheld, assuming the ALJ provided other valid rationales. *Batson*, 359 F.3d at 1197. Lastly, if the credibility finding is supported by substantial evidence, the Court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ noted that Plaintiff's assertion of total disability was undermined by her work history, daily activities, and the medical record. Tr.30. With regard to Plaintiff's work

history, the ALJ noted that there were significant gaps even before the alleged onset date. Tr. 30. Poor work history extending before the alleged onset date is a valid credibility factor. *See Thomas*, 278 F.3d at 959 (finding that the ALJ gave clear and convincing reasons for discounting the plaintiff's testimony regarding her inability to work where she had "'extremely poor work history' and 'has shown little propensity to work in her lifetime'"). Moreover, Plaintiff worked after her alleged onset date, earning at substantially the same levels as before said onset date. Tr. 30, 277. In particular, Plaintiff also completed a six-month internship with the Office of Vocational Rehabilitation, and held herself out as willing, ready, and able to work to receive unemployment benefits. Tr. 30, 239–40. The ALJ reasonably found that Plaintiff's work history was inconsistent with Plaintiff's assertion of total disability.

Second, the ALJ considered Plaintiff's daily activities in evaluating her subjective complaints. Tr. 30. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits[.]" *Fair*, 885 F.2d 597 at 603 (citations omitted). Additionally, "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Id.*

The ALJ found that Plaintiff's daily activities were inconsistent with her allegations of disabling levels of pain. *Id.* Some of Plaintiff's "robust activities," include working as a personal care assistant for two clients approximately ten hours per week, doing laundry, cooking, cleaning the kitchen, dusting, vacuuming, and gardening. Tr. 30, 297–299. Plaintiff drives, often with the assistance of her children, shops three times a week, and is able to manage her own money. *Id.* The ALJ also found that she shops for her clients when she performs personal care assistant work, goes to church most Sundays, attends support groups, and visits her older daughters. Tr.

30, 297–299, 693. Such activities validly can be used to make a finding of inconsistency with a plaintiff's allegations of complete disability. *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (upholding adverse credibility finding where the plaintiff "remain[ed] capable of caring for all his own personal needs, the performance of his own routine household maintenance and shopping chores, riding public transportation, and driving his own automobile"); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (holding that an ability to take care of one's personal needs, prepare easy meals, do light housework, and shop for some grocery may be seen as inconsistent with the presence of a condition which would preclude all work activity); *Molina*, 674 F.3d at 1113 (finding the plaintiff's assertion that her anxiety precluded even minimal human interaction to be inconsistent with such activities as "walking her two grandchildren to and from school, attending church, shopping, and taking walks," and holding that "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment").

The Ninth Circuit has explained that a claimant's ability to "spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting" is sufficient on its own to discredit an allegation of disabling pain. *Fair*, 885 F.2d at 603. But an ALJ need not rely solely on a claimant's daily activities to discredit subjective testimony of symptoms: an ALJ may validly rely on daily activities in conjunction with other factors. *See Burch*, 400 F.3d at 680–81 (upholding the ALJ's adverse credibility determination based on the claimant's daily activities alongside objective medical findings and lack of consistent treatment). Here, the ALJ has not singularly relied on Plaintiff's daily activities to discredit her claim that her limitations are totally disabling; she has also relied on the

Plaintiff's work history and objective medical record. The ALJ's finding that Plaintiff's daily activities of living were inconsistent with her allegation of total disability was therefore properly based on substantial evidence.

Finally, the ALJ found that the medical record did not support the alleged severity of Plaintiff's mental or physical impairments. Such evidence may be used to provide clear and convincing reasons to support an adverse credibility finding. *Lingenfelter*, 504 F.3d at 1040; *Tommasetti*, 533 F.3d at 1040. The ALJ reiterated that the imaging reports of Plaintiff's back were mild, that the examinations unremarkable, and that treatment for her allegedly disabling back pain and diabetes symptoms was "essentially routine and/or conservative in nature and [had] been generally successful in controlling her symptoms." Tr. 28, 30–31. As mentioned above, lumbar imaging showed only "mild low lumbar facet arthropathy." Tr. 24, 619. Plaintiff's nerve conduction tests were unremarkable. Tr. 24, 1048. Imaging of Plaintiff's knees was negative. Tr. 1068–70. The ALJ additionally found that though Plaintiff has intermittent problems requiring hospitalization for her renal condition, the condition is mostly managed with medication. Tr. 31. The ALJ's consideration of the medical record in determining Plaintiff's credibility was not improper.

The ALJ provided specific, clear and convincing reasons for finding that Plaintiff's testimony was less than fully credible. Those reasons were supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tommasetti*, 553 F.3d at 1038. Accordingly, Plaintiff's argument that the ALJ improperly found Plaintiff not fully credible fails.

//

//

CONCLUSION

Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, it is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this _____ day of _____, 2017.


_____
MARCO A. HERNÁNDEZ
United States District Judge